## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JORGE VILA,<br>BEAVER COTTAGE NORTH,<br>ALDERBROOK ROAD, CRANLEIGH,<br>SURREY, GU6 8QX, ENGLAND,<br><br>          Plaintiff,<br><br>      v.<br><br>INTER-AMERICAN INVESTMENT CORPORATION,<br>1350 NEW YORK AVENUE, NW<br>WASHINGTON, DC, 20577,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. |

## NOTICE OF REMOVAL

Defendant Inter-American Investment Corporation ("IIC"), by its counsel, hereby petitions this Court for removal, pursuant to 22 U.S.C. § 283gg and 28 U.S.C. § 1446, of <u>Jorge Vila v. Inter-American Investment Corporation,</u> pending in the Superior Court of the District of Columbia, Civil Division, (C.A. No. 0007918-06).

In support of removal, IIC states:

1. On November 27, 2006, Defendant IIC received, by certified mail, a copy of a claim filed against it by plaintiff Jorge Vila in the Superior Court of the District of Columbia, Civil Division. The claim is for damages allegedly due Mr. Vila in connection with services he alleges to have performed for the IIC.

2. This Court has original jurisdiction over Mr. Vila's claim against IIC under 22 U.S.C. § 283gg. Pursuant to 22 U.S.C. § 283gg, IIC is entitled to remove Mr. Vila's

claim to this Court, which is the federal district court in the district where IIC's principal office in the United States is located.

3. Removal is timely under 28 U.S.C. § 1446(b) and 22 U.S.C. § 283gg.

4. IIC makes this petition without waiving any rights or defenses of immunity for either itself or its property.

5. IIC is filing herewith copies of all process, pleadings, and orders that have been served upon it in connection with Mr. Vila's claim.

6. Written notice of the filing of this Notice of Removal will be served on Mr. Vila and, together with a copy of the Notice of Removal and supporting papers, will be filed with the Clerk of the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, IIC requests that this action be removed from the Superior Court of the District of Columbia to this Court.

Respectfully submitted,

Nancy L. Perkins
D.C. Bar No. 421574
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000

Sarah E. Fandell
Inter-American
 Investment Corporation
1350 New York Ave., N.W.
Washington, D.C. 20577
(202) 623-3947

*Counsel for Defendant*
*Inter-American Investment Corporation*

*Of Counsel*

December 15, 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JORGE VILA,<br>BEAVER COTTAGE NORTH,<br>ALDERBROOK ROAD, CRANLEIGH,<br>SURREY, GU6 8QX, ENGLAND,<br><br>     Plaintiff,<br><br>v.<br><br>INTER-AMERICAN INVESTMENT CORPORATION,<br>1350 NEW YORK AVENUE, NW<br>WASHINGTON, DC, 20577,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF COMPLIANCE
## WITH 28 U.S.C. § 1446(d)

Defendant the Inter-American Development Bank, by its counsel, certifies that it served written notice of the filing of its Notice of Removal upon plaintiff Jorge Vila, and that it filed a copy of the Notice of Removal with the Clerk of the Superior Court of the District of Columbia.

Respectfully submitted,

Nancy L. Perkins
D.C. Bar No. 421574
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000

*Counsel for Defendant*
*Inter-American Investment Corporation*

Sarah E. Fandell
Inter-American
  Investment Corporation
1350 New York Ave., N.W.
Washington, D.C. 20577
(202) 623-3947

*Of Counsel*

December 15, 2006

-3-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal,

the Certificate Required by Federal Rule of Civil Procedure 7.1 and LCvR 7.1 of the

Local Rules of the United States District Court for the District of Columbia, and the

Certificate of Compliance with 28 U.S.C. § 1446(d), were served by first-class mail,

postage prepaid, this 15th day of December, 2006, on:

> F. Douglas Hartnett
> ELITOK & HARTNETT, LLC
> 2428 Wisconsin Ave., N.W.
> Washington, D.C.  20007
> Counsel for Plaintiff Jorge Vila

Nancy L. Perkins

-4-



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JORGE R VILA
   Vs.
INTER-AMERICAN INVESTMENT CORPORATION

C.A. No.    2006 CA 007918 B

## INITIAL ORDER

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge MAURICE ROSS
Date:  October 26, 2006
Initial Conference: 9:30 am, Friday, January 26, 2007
Location:  Courtroom B-52
         409 E Street, NW
         WASHINGTON, DC 20001

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Jorg U. la

*Plaintiff*

0007918-06

vs.

Civil Action No. _____

Inter American Industrial *Defendant*
Corp

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_____
Name of Plaintiff's Attorney

_____
Address

_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JORGE R. VILA )
Beaver Cottage North )
Alderbrook Road, Cranleigh )
Surrey GU6 8QX, England )
)
Plaintiff, )
)
v. )
)
INTER-AMERICAN INVESTMENT )
CORPORATION )
1350 New York Avenue, NW )
Washington DC, 20577, USA )
Defendant, )
)

RECEIVED
Civil Clerk's Office

OCT 2 6 2006

Superior Court of the
District of Columbia
Washington, D.C.

0007918-06

C.A. No._____
(Jury Trial Requested)

## COMPLAINT FOR DAMAGES

### Introductory Statement

Plaintiff, Jorge R. Vila, by and through undersigned Counsel, hereby files this complaint for money damages for Breach of Contract, Unjust Enrichment, Defamation and Tortuous Interference with Prospective Advantage, and states as follows:

### I. PARTIES

1. PLAINTIFF Jorge R. Vila (hereinafter "Plaintiff"), is a resident at Beaver Cottage North, Alderbrook Road, Cranleigh, Surrey GU6 8QX, England, where he has been working as an independent banking consultant in emerging markets since January 2000. His professional activities include contributing to identifying, developing, structuring and implementing financing alternatives for projects, financial institutions and corporations in

emerging markets, as well as advising on market conditions in international capital markets and appropriate terms and structures for debt obligations of emerging market borrowers. Previously, Plaintiff worked at financial institutions in Washington DC, New York, Madrid, Buenos Aires and London, as well as independently, since 1979.

2. DEFENDANT Inter-American Investment Corporation (hereinafter "Defendant"), is a corporation doing business at 1350 New York Avenue, NW, Washington, DC 20577, with headquarters and primary contacts in the District of Columbia. Defendant's stated mission is to "promote and support the development of the private sector and capital markets in Latin American and Caribbean member countries by investing, lending, innovating, and leveraging resources as the institution charged with fostering the development of small and medium-size enterprises to further sustainable economic development." (Defendant's website at: www.iic.int/).

## II. JURISDICTION

3. This court has jurisdiction over this complaint pursuant to DC Code 11-921. Defendant is a Corporation doing business in the District of Columbia, at 1350 New York Avenue, NW, Washington, DC. The events giving rise to this complaint occurred in the District of Columbia.

## III. GENERAL FACT AVERMENTS

4. Plaintiff claims compensation for consulting services delivered to Defendant, at their request and on their behalf from London, England, Milan, Italy and Defendant's offices in Washington DC, USA, from January to August 2003, which remain unpaid

notwithstanding Plaintiff's repeated claims.

5. Defendant acknowledged Plaintiff's services, but refused to pay for them, on November 4, 2003, after Plaintiff presented Defendant with an invoice, supported by extensive documentation, according to terms similar to those the parties had previously agreed to and operated under.

**a. Consulting services requested by Defendant in 2001 and 2002.**

6. On several occasions from early 2001 to December 2002, Defendant requested Plaintiff's consulting services to contribute to sell participations in "B Loans" under Defendant's A-B Loan Programme (co-financing with private financial institutions), and advice on international capital market conditions and appropriate terms and structures for debt obligations of Defendant's actual and potential clients, Latin American and Caribbean borrowers. There were brief intervals between projects and Plaintiff's compensation varied from a monthly retainer plus a success fee (a percentage of the nominal amount in participations obtained) to a success fee only. Plaintiff's services were always satisfactorily performed and publicly praised by Defendant's officers and clients.

**b. Consulting services requested by Defendant in 2003.**

7. From January to August, 2003, several Defendant's senior officers, with approval of Defendant's senior management, again requested Plaintiff's consulting services with respect to four new projects. The requests were unsolicited, repeated, specific and documented. Plaintiff and Defendant's senior officers verbally agreed to complete contractual documentation, including compensation, "later"; even though no

*specific* compensation structure was discussed for the new projects, the senior officers

who made the requests, and senior management who accepted the work done, were fully

aware of the history of Plaintiff's services and expectation of compensation.


8. From January to August 2003, acting for and on behalf of Defendant, at the

request of and with authority given by Defendant's senior officers with approval of senior

management, and in constant coordination with them, Plaintiff:

    (i)    assisted Defendant's senior officers to obtain a mandate from Banco Safra, a Brazilian bank, to arrange a syndicated credit facility for Banco Safra, identifying potential participants, negotiating terms and conditions with Banco Safra and potential participants, and contributing to draft, review and distribute relevant confidential documentation;

    (ii)    identified a co-financier for a Defendant's loan to Sunset Beach, a hotel project in Jamaica, negotiating terms and conditions with the co-financier and Sunset Beach sponsor and contributing to draft, review and distribute relevant confidential documentation;

    (iii)    assisted Defendant's senior officers to request a waiver of conditions to first disbursement from two banks under a Defendant's previous B Loan to Invertec Pesquera Mar de Chiloe SA, a Chilean salmon company, contributing to negotiate with the banks and draft, review and distribute relevant confidential documentation; and

    (iv)    prepared a description of the Defendant's A-B Loan Programme for marketing purposes.


    (together, the "Projects");


9. Specifically, at the request of Defendant's senior officers with the approval

of senior management, and working from London, England, Milan, Italy and the

Defendant's offices in Washington DC, USA, Plaintiff carried out the following activities

for the Projects:

    (I)    participated in Defendant's internal discussions and conference calls organized and initiated by Defendant's senior officers with Defendant's clients and

financial institutions globally, to discuss and negotiate terms and conditions of the Projects;

(ii)    negotiated, on behalf of Defendant, terms and conditions of Defendant's credit facility for Banco Safra and loan to Sunset Beach, with representatives of Banco Safra, the Sunset Beach sponsor and a number of financial institutions globally;

(iii)   met with representatives of Banco Safra at the Defendant's Annual Meeting in Milan, Italy, from March 22-27, 2003, to negotiate terms and conditions of Defendant's credit facility for Banco Safra, as well as of a large number of financial institutions attending the Meeting, to discuss their potential participation in Defendant's credit facility for Banco Safra;

(iv)   met with Defendant's senior management at the Defendant's Annual Meeting in Milan, Italy, from March 22-27, 2003, and at the Defendant's Headquarters in Washington DC, USA, on May 12 and 13, 2003, specifically to report on Plaintiff's negotiations with Banco Safra and financial institutions at the Meeting, and discuss the Projects;

(v)    distributed, on behalf of Defendant, Defendant's confidential documentation on the Projects to clients and a large number of financial institutions globally;

(vi)   reviewed and advised on Defendant's internal and confidential commercial, financial and credit information on the Projects and clients, provided by Defendant's senior officers with approval of senior management; and

(vii)  reviewed and drafted Defendant's external documentation on the Projects, including documents for the signature of Defendant's senior management.

(together, the "Services");

10.   Defendant's requests to Plaintiff and Plaintiff's resulting Services were documented in approximately 270 e-mails exchanged between Plaintiff and Defendant's senior officers, senior management and clients, as well as a number of financial institutions globally, from January to August 2003. Plaintiff kept Defendant's senior officers and senior management regularly informed of the Services, presenting a total of 47 reports from January to August 2003. Plaintiff's Services were performed satisfactorily and accepted by Defendant's senior officers and senior management from January to August 2003.

11. As shown in the above mentioned 270 e-mails, the Defendant's senior officers and senior management that requested, approved and accepted Plaintiff's Services, discussed their contractual implementation, provided Plaintiff with authority to negotiate terms and conditions of the Projects with Defendant's clients and financial institutions, requested Plaintiff to participate in internal discussions and analysis of confidential credit, financial and commercial information and documentation on the Projects, provided Plaintiff with confidential information and documentation on the Projects, requested Plaintiff to participate in conference calls organized and initiated by Defendant to discuss and negotiate terms and conditions of the Projects, met with Plaintiff in Milan, Italy, in March 2003, and Washington DC, USA, in May 2003, received Plaintiff's reports on the Services and discussed the Projects, requested Plaintiff to draft Defendant's external documentation, including documentation for the signature of Defendant's senior management, and were generally aware of Plaintiff's Services, included:

| | | |
|---|---|---|
| Jacques Rogozinski | General Manager | Washington DC |
| Steven Reed | Deputy General Manager | Washington DC |
| Raul Herrera | General Counsel | Washington DC |
| Mario Mahler | Chief Credit Unit | Washington DC |
| Jorge Roldan | Chief Finance & Risk Division | Washington DC |
| Victor Moscoso | Regional Head | Washington DC |
| David Levy | Senior Officer | Washington DC |
| Michael Apel | Regional Head | Montevideo, Uruguay |
| Felipe Varela | Senior Officer | Montevideo, Uruguay |
| Javier Barsantini | Officer | Montevideo, Uruguay |
| Diego Noseda | Senior Lawyer | Washington DC |
| Maria Julieta Moreno | Lawyer | Washington DC |
| Laura Oradei-Bayz | Officer | Washington DC |

12. A number of Defendant's administrative personnel, particularly in Washington DC, were also aware of Plaintiff's Services.

**c. Compensation claims until November 2003 – Recognition of the Services**

13. Plaintiff's compensation expectation for the Services was discussed with Victor Moscoso between January and May 2003, and further confirmed in two e-mails from Plaintiff to Mr Moscoso of May 30 and June 2, 2003. After acknowledging Plaintiff's compensation expectation by e-mail from Mr Moscoso to Plaintiff of June 2, 2003, Defendant continued to accept and even requested additional Services from Plaintiff, and to provide Plaintiff with confidential documentation and information on the Projects, until August 2003.

14. On August 4, 2003, in an e-mail replying to Plaintiff's further compensation claims based on work completed for the Sunset Beach project, Mr Moscoso acknowledged Plaintiff's work, but refused to compensate it. Mr. Moscoso attempted to justify the refusal to pay for Plaintiff's Services and suggested entirely new terms for future work by Plaintiff. -Following Mr. Moscoso's refusal, Plaintiff appealed to Steven Reed, Defendant's Deputy General Manager in an attempt to obtain compensation.

15. In an e-mail dated August 28, 2003, Mr. Reed acknowledged Plaintiff's "considerable amount of work," but refused to pay for Plaintiff's Services, alleging, without providing any supporting documentation, a different "understanding" of the agreement between Plaintiff and Defendant and the absence of a written contract with Plaintiff. Mr. Reed further acknowledged the value of Plaintiff's Services and Defendant's obligation to compensate him by stating that Defendant would ensure that Plaintiff's work was "clarified and documented," and that under the documentation that Defendant would prepare, Plaintiff would be compensated "based on a success fee."

16.  Mr. Reed failed to explain why some of Defendant's most senior officers, with his approval and during six months, had involved Plaintiff so deeply in the Projects, if Defendant, as he argued, did "not have a contract" with Plaintiff. The Services were requested and performed subject to the same audit controls, internal policies and regulations, accounting and legal requirements and procedures and protection of public monies later used by Defendant as the impediment to payment.  Mr Reed also failed to explain why they did not prevent Defendant's most senior officers from requesting and accepting Plaintiff's Services, with his approval and for such a long time, if, as he now claimed, Defendant did "not have a contract" with Plaintiff.

17.  Plaintiff rejected Mr Reed's arguments, noting that the Defendant's senior officers who requested and accepted his Services during six months, with Mr Reed's approval, did not appear to act under any "misunderstanding", and that there was no reference to compensation on a success fee basis in any of the numerous e-mails received from those senior officers, or in any other documentation exchanged between Defendant and Plaintiff from January to August 2003, and reiterated his compensation claim.

18.  On October 9,  2003, Plaintiff e-mailed to Defendant an $89,909.00 invoice for his Services, for a total of 105 days from January to August 2003, including a detailed daily description of the Services and the extensive supporting documentation. This sum was consistent with the nature and amount of the Services, Plaintiff's experience, previous

compensations paid to Plaintiff by Defendant and Defendant's Consultant and Appointment Levels.

19. Plaintiff had to reiterate this invoice twice before Defendant replied by e-mail of November 4, 2003, raising the absence of a contract under "defined terms and conditions" and the "necessary budget coverage", required, in Defendant's view, by "policies" applicable to "public law institutions", to avoid payment.

### d. Compensation claims since December 2003

20. On December 29, 2003, Plaintiff reiterated his claim in a letter to Defendant's President at the time, Enrique Iglesias, including a detailed daily description of the Services and copies of the extensive documentation that confirmed Plaintiff's statements and supported the legitimacy of his claim (about 280 e-mails exchanged with Defendant's senior officers and senior management, clients and financial institutions, and confidential documentation and information on the Projects received from Defendant's senior officers).

21. Plaintiff had to reiterate this letter 4 times (April 29, June 27, August 16 and September 12, 2004) before receiving, nine months later, a letter from Defendant dated August 31, 2004, now raising issues of "audit controls" and "protection of public monies managed by (Defendant)", no contract or evidence of periodic reports, "disagreeing" with the "meaning of the contacts that (Plaintiff) had with (Defendant) employees", trying to "take advantage" of "exchanges with (Defendant) employees", the "voluntary and

promotional" nature of the Services, and others. A further letter from Defendant dated October 6, 2004 again invoked the "public nature of the funds administered by (Defendant)" to avoid payment. These letters were signed by Defendant's General Manager.

22. On January 13, 2005, pursuant to the procedures in the Inter-American Development Bank ("IDB") website (www.iadb.org), Plaintiff complained to the Office of Institutional Integrity ("OII") of the IDB, with oversight responsibilities over Defendant, about the abuse, lack of ethics and institutional integrity of Defendant, presenting extensive documentation that included a legal opinion from Holman, Fenwick & Willan, a UK law firm. Even though Plaintiff reiterated this complaint on July 27, 2005, the OII has not yet responded.

23. On October 31, 2005, Plaintiff wrote to the Defendant's Board of Executive Directors, reiterating his complaint about the abuse and lack of ethics and institutional integrity of Defendant and his claim of compensation for his Services. Plaintiff underlined his concern about the serious implications under U.S. laws of the issues raised by Defendant with respect to violations of audit controls, internal regulations and policies, accounting and legal requirements and procedures, protection of public monies and false representations in the context of the Services, as well as about his own responsibility under those laws and his personal and professional reputation, since he was included in confidential internal and external processes involving the management of public monies

and claimed to act for and on behalf of Defendant before Defendant's clients and financial institutions.

24. In November 2005, an Executive Director, Mr Eugenio Diaz Bonilla, was told by a member of Defendant that Plaintiff had had "a similar compensation problem" with the Private Sector Department of the IDB when Plaintiff worked for them as a consultant in 2000. Immediately upon learning from Mr Diaz Bonilla of this defamatory comment, Plaintiff obtained and sent to Mr Diaz Bonilla an e-mail of November 21, 2005, from the former Head of Syndications of the IDB Private Sector Department, Plaintiff's direct report during his assignment, confirming not only Plaintiff's "excellent work" but that "nothing in the way (Plaintiff) conducted (Plaintiff's) assignment could be construed in a negative light".

25. More recently, in September 2006, Plaintiff learned from a former IDB manager, Mrs Beatriz Harretche, that sometime in 2004, while she headed the IDB Arbitration Tribunal, she had been told by a member of Defendant's Human Resources Department that Plaintiff had used his "influence and contacts" as a former IDB officer to obtain confidential information and documentation about the Projects.

## IV. COUNTS

### Count 1. Breach of Contract (Implied)

26. Plaintiff re-alleges all previous paragraphs.

27. The extensive supporting documentation clearly and unequivocally establishes that:

(i)      Defendant requested Plaintiff to perform the Services in exchange for compensation;

(ii)     Defendant's senior officers acted with authority and understanding of their actions and consequences, as well as with approval of Defendant's senior management;

(iii)    At the time that Defendant requested the Services, and throughout the time that they were performed by Plaintiff, Defendant were fully aware of the compensation history and nature of Plaintiff's consulting activities and of his expectation of compensation for the Services;

(iv)     Plaintiff responded to Defendant's requests for the Services in good faith and in the ordinary course of his consulting activities;

(v)      Plaintiff delivered the Services in satisfactory form and time, and Defendant accepted the Services;

(vi)     Defendant benefitted from the Services;

(vii)    there was an implied contract between Plaintiff and Defendant;

(viii)   Defendant breached their contract with Plaintiff by not paying for Plaintiff's Services;

(ix)     Defendants have not acted in good faith or in a spirit of fairness; Defendant raised the issues to avoid paying for Plaintiff's Services after the Services were completed, even though Defendant could have raised them at an earlier stage but chose not to do so;

(x)      The issues raised by Defendant to avoid paying for the Services were irrelevant or unsubstantiated, raised serious questions about Plaintiff's responsibility under US laws and specifically tended to discredit Plaintiff's professional and personal reputation;

(xi)     Plaintiff acted reasonably and in good faith under the above facts and circumstances.

## Count 2. Unjust Enrichment

28. Plaintiff re-alleges all previous paragraphs.

29. The extensive supporting documentation clearly and unequivocally further establishes that Plaintiff conferred a benefit to Defendant by providing the Services and Defendant retained this benefit. Plaintiff has not been compensated for the Services, and it is unjust for Defendant to retain the benefit without compensation to Plaintiff for the

Services.

## Count 3. Defamation

30. Plaintiff re-alleges all previous paragraphs.

31. The extensive supporting documentation clearly and unequivocally further establishes that employees of the Defendant, acting in their official capacities, made statement to third parties about Plaintiff's business, good will and professional reputation, knowing those statements to be false and intending to cause injury to Plaintiff's professional and personal reputation as understood by the third parties.

32. Those statements were published to at least two known individuals, and on information and belief, to other members of Defendant's Board of Directors and staff. These statements damaged Plaintiff's professional and personal reputation and standing in the community.

33. As a result, Plaintiff has suffered mental anguish, embarrassment and stress, which has adversely affected his physical health.

## Count 4. Tortuous Interference with Prospective Advantage

34. Plaintiff re-alleges all previous paragraphs.

35. The extensive supporting documentation clearly and unequivocally further establishes that employees of the Defendant, acting in their official capacities, made statements to third parties about Plaintiff's business, good will and professional



reputation, knowing those statements to be false and intending to cause injure to Plaintiff's professional and personal reputation as understood by the third parties.

36. Those statements were published to at least two known individuals, and on information and belief, to other members of Defendant's Board of Directors and staff. These statements damaged Plaintiff's professional and personal reputation and standing in the community. As a result of these statements Plaintiff has suffered a significant decrease in the amount of consulting business he receives, resulting in a loss of income, emotional and psychological stress, and damage to his physical health.

## IV. REQUEST FOR RELIEF

WHEREFORE, Plaintiff request the following relief be granted for the counts above:

1. Payment in the amount of $89,909.00, plus interest from the date of invoice for the work performed by the Plaintiff;

2. Compensatory Damages in the amount of $250,000.00 for lost income, damage to Plaintiff's physical health resulting from stress caused by the defamation and tortuous interference by Defendant;

3. Compensatory Damages in the amount of $300,000.00 for the damage done to his reputation and standing in the community by the defendant's defamatory statements;

4. Punitive damages in the amount of $300,000.00 for the damage done to Plaintiff's reputation and professional standing and his ability to obtain work in his field of expertise;

5.    Attorney fees and costs;

6.    All other relief which law and equity may provide, including the costs,

expenses, and disbursements necessary to pursue this action,

## V. JURY DEMAND

37.  Plaintiff requests a trial by jury for all issues so triable.

Respectfully Submitted,

F. Douglas Hartnett
DC Bar #466851
Elitok & Hartnett, LLC
2428 Wisconsin Ave., NW
Washington, DC 20007
Tel: (202) 965 0529
Fax: (202) 965 0530

06 - 2143
M
RBW

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

JORGE VILA
Beaver Cottage North
Alderbrook Road, Cranleigh, Surrey, GU6 8QX, ENGLAND

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888 n/a
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

F. Douglas Hartnett
Elitok & Hartnett, LLC
2428 Wisconsin Ave., NW
Washington, DC, 20007

**DEFENDANTS**

INTER-AMERICAN INVESTMENT CORPORATION
1350 New York Ave., NW
Washington, DC, 20577

CASE NUMBER   1:06CV02143

JUDGE: Reggie B. Walton

DECK TYPE: Contract

DATE STAMP: 12/15/2006

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ● 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ● 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)**     OR     **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ⊙ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Breach of contract, unjust enrichment, defamation, tortious interference with prospective advantage

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 939,909    Check YES only if demanded in complaint

JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 12/15/2006    SIGNATURE OF ATTORNEY OF RECORD    *Nancy Perkins* / rmH

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

