**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JORGE VILA,                             )
                                        )
      Plaintiff,                        )
                                        )
v.                                      )      Civil Action No. 06-2143 (RBW)
                                        )
INTER-AMERICAN INVESTMENT,              )
CORPORATION,                            )
                                        )
      Defendant                         )
                                        )
_____)

**MEMORANDUM OPINION**

The plaintiff, Jorge Vila, filed this action for damages in Superior Court for the District of

Columbia on October 26, 2006, alleging breach of an implied contract, unjust enrichment,

defamation, and tortious interference with a prospective business advantage. The case was

subsequently removed to this Court by the defendant, Inter-American Investment Corporation

("IIC"), pursuant to 22 U.S.C. § 283gg (2000), which confers original jurisdiction to this Court

over suits brought against the IIC. Currently before the Court is the Defendant's Motion to

Dismiss.[1] For the reasons set forth below, the defendant's motion is granted in part and denied in

part.[2]

---

[1] Also filed in connection with this motion are the Defendant's Memorandum of Points and Authorities in Support of the Motion to Dismiss ("Def.'s Mem."), the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Pl.'s Mem."), and the Defendant's Reply Memorandum of Points and Authorities in Support of Motion to Dismiss ("Def.'s Reply).

[2] Because the pleadings are sufficient to rule on the motion, the defendant's request for oral argument is denied.

## I. Background

The plaintiff filed his four-count complaint ("Compl.") in this action, alleging that the defendant wrongly refused to compensate him for services rendered.  Compl. ¶¶ 26-29.  The plaintiff also alleges that employees of the IIC made statements to others that were defamatory and improperly interfered with a prospective business advantage, "resulting in a loss of income, emotional and psychological stress, and damage to his physical health."  Id. ¶¶ 30-36.  In 2001 and 2002, prior to providing the services for which the plaintiff contends he was not compensated, the plaintiff had entered into several contracts with the IIC to perform consulting services.  Compl. ¶ 6; see, e.g., Pl.'s Mem., Exhibit ("Ex.") 4 (June 27, 2002 Agreement for Consulting Services).  Pursuant to these prior contracts, the plaintiff, inter alia, performed "consulting services to contribute to sell participations in 'B Loans' under [the] [d]efendant's A-B Loan Programme . . . and [to give] advi[ce] on international capital market conditions and appropriate terms and structures for debt obligations of [the d]efendant's actual and potential clients."  Compl. ¶ 6.  He was compensated for the services he performed in 2001 and 2002, sometimes in the form of "a monthly retainer plus a success fee (a percentage of the nominal amount in participations obtained)," and sometimes in the form of success fees only.[3] Id.

Beginning in early 2003, through August of that year, the plaintiff contends that he was again engaged by the IIC to perform consulting services similar to those covered under the prior contracts, however, there was never a written contract that covered these services.  Compl. ¶¶ 7-

---

[3]In his memorandum in opposition to the defendant's motion to dismiss, the plaintiff describes four distinct contractual arrangements; two provided for a monthly retainer plus a success fee and two provided for a success fee only.  Pl.'s Mem. at 13-14.  The retainer payments varied in amount, as did the percentage used to calculate the success fee.  Id.

10.    The plaintiff asserts that "[he] and the [d]efendant's senior officers verbally agreed to complete contractual documentation, including compensation, 'later.'" Compl. ¶ 7.  The plaintiff also states that following this verbal agreement, "[f]rom January to August 2003, acting for and on behalf of [the d]efendant," he performed various consulting services for the IIC, including "assist[ing] [the d]efendant's senior officers to obtain a mandate from . . . a Brazilian bank, . . . identif[ying] a cofinancier for a [d]efendant's loan to . . . a hotel project in Jamaica, . . . [and] assist[ing] [the d]efendant's senior officers [in requesting] a waiver of conditions to first disbursement from two banks." Compl. ¶¶ 8-9.  After completion of his services, on August 4, 2003, Victor Moscoso, an employee of the IIC, informed the plaintiff that he did not think he would be compensated for his services.  Pl.'s Mem., Ex. 7 (Email #260, Aug. 4, 2003, email from Victor Moscoso to Jorge Vila).  In subsequent email exchanges between the plaintiff and Steven Reed, another IIC employee, Mr. Reed also expressed doubt about whether the plaintiff would be compensated for any services absent a written contract, with the possible exception of success fees for some of his services.  Id. (Emails # 262, 264, Aug. 28 & Sept. 12, 2003 emails from Steven Reed to Jorge Vila).  Later, on October 9, 2003, the plaintiff submitted an official invoice to the IIC documenting the work he performed and requesting payment in the amount of $89,909.  Id. (Email # 266, Oct. 9, 2003 email from Jorge Vila to Jacques Rogozinski).[4]  The plaintiff resubmitted this request for payment on October 22, 2003, and on November 4, 2003, received an email from Alejandra Vallejo, an IIC employee, stating that absent a written contract, he would not receive any compensation.  Id., Ex. 2 (Translated Nov. 4, 2003 email from

---

[4]It appears from the plaintiff's filings that this sum represents neither a success fee nor a monthly retainer, but rather a daily consulting fee.  Pl.'s Mem., Ex. 4 (Email # 266).

Alejandra Vallejo to Jorge Vila).

In November 2005, while still attempting to recover compensation for his 2003 services, the plaintiff alleges that an employee of the IIC told Eugenio Diaz Bonilla, an executive director of the IIC, that the plaintiff "had had 'a similar compensation problem' with the Private Sector Department of the [Inter-American Development Bank ("IDB")] when [the p]laintiff worked for them as a consultant in 2000."  Compl. ¶ 24.  Additionally, in September 2006, the plaintiff alleges that he learned of a 2004 statement made by another IIC employee to an IDB employee that the "[p]laintiff had used his 'influence and contacts' as a former IDB officer to obtain confidential information and documentation about the Projects."  Id. ¶ 25.

The plaintiff is now seeking in this action to recover the compensation he alleges he is owed by the IIC and for defamation and tortuous interference with a prospective business advantage. The first count claims that the plaintiff and the IIC had an implied contract for his consulting services, which the IIC breached.  Id. ¶ 27.  The second count alternatively claims that the IIC was unjustly enriched by the plaintiff's services and that the IIC must therefore compensate him for the value of those services.  Id. ¶ 29.  The third count of the complaint alleges that IIC employees made defamatory statements concerning the plaintiff, "intending to cause injury to the [p]laintiff's professional and personal reputation."  Id. ¶ 31-32.  The fourth count alleges that IIC employees, through their statements, improperly interfered with a prospective business advantage of the plaintiff.  Id. ¶ 35-36.  The defendant has moved to dismiss the plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that the IIC's judicial immunity deprives the Court of subject matter jurisdiction.  Def.'s Mem. at 6.  The defendant also moves to dismiss the plaintiff's remaining claims pursuant to Rule 12(b)(6) for failure to

state a claim upon which relief may be granted.  Id. at 2-3.

## II. Standard of Review

A.  Rule 12(b)(1) of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish by a preponderance of the evidence that this Court has jurisdiction to entertain his claims.  Fed. R. Civ. P. 12(b)(1); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998); Darden v. United States, 18 Cl. Ct. 855, 859 (Cl. Ct. 1989).  While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1),  Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), because the plaintiff has the burden of establishing the Court's jurisdiction, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge of Fraternal Order of Police, 185 F. Supp. 2d at 13-14 (citation omitted).  Moreover, the Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Id. at 13.

B.  Rule 12(b)(6) of the Federal Rules of Civil Procedure

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged in the complaint.  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  In deciding whether to dismiss a claim

under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.[5]  <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624-25 (D.C. Cir. 1997).  The motion should be granted and the claim dismissed if the plaintiff does not provide "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, ___U.S. ___, ___, 127 S.Ct. 1955, 1974  (2007).

### III. Legal Analysis

<u>A.  The IIC's claim of Statutory Immunity</u>

The defendant states that it enjoys broad immunities from judicial process under 22 U.S.C. § 283hh (2000), which gives "full force and effect in the United States" to the provisions of the IIC charter that provides immunity from suit, as well as the International Organizations Immunities Act, 22 U.S.C. §§ 288-288k (2000), which grants "immunity from suit and every form of judicial process" to designated organizations such as the IIC.[6]  <u>Id.</u> § 288a(b); Def.'s Mem. at 8.  The

---

[5]Although Rule 12(d) of the Federal Rules of Civil Procedure requires that a motion under Rule 12(b)(6) be considered as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," the Court's consideration of the emails attached as exhibits to the plaintiff's memorandum in opposition does not require such a conversion, since the plaintiff has extensively referenced and quoted the emails, not only in his opposition papers but also in his complaint, in support of his claims.  <u>Vanover v. Hantman</u>, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (holding that in a wrongful termination suit, that "various letters and materials produced in the course of plaintiff's discharge proceeding, all of which have been attached to plaintiff's opposition papers, fall under this exception and may be considered without converting the motion to one for summary judgment"); <u>see</u> Kurtis A. Kemper, <u>What Matters not Contained in Pleadings may be Considered in Ruling on a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or Motion for Judgment on the Pleadings under Rule 12(c) without Conversion to Motion for Summary Judgment</u>, 138 A.L.R. Fed. 393 (1997) (citing numerous cases wherein courts have considered materials referenced or incorporated in the complaint and attached to later pleadings without conversion to summary judgment); <u>see also</u> <u>Langer v. George Washington Univ.</u>, 498 F. Supp. 2d 196, 202 n.1 (D.D.C. 2007) (declining to convert a 12(b)(6) motion to dismiss into a motion for summary judgment merely for taking into consideration a "letter [that] was referred to and quoted from in the complaint and [was] central to the plaintiff's claim"); <u>Daisley v. Riggs Bank, N.A.</u>, 372 F. Supp. 2d 61, 67 n.1 (D.D.C. 2005) (same).

[6]The IIC is such an organization, having been granted "the privileges, exemptions, and immunities conferred by the International Organizations Immunities Act" by Executive Order.  51 Fed. Reg. 35495; Exec. Order

(continued...)

defendant invokes immunity, based on these provisions, and argues that this Court, consequently, lacks jurisdiction to entertain any of the claims in the plaintiff's complaint and therefore must dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  Def.'s Mem. at 2. The plaintiff, on the other hand, argues that the "IIC has waived its immunity to the type of claim [he] has file[d] here."  Pl.'s Mem. at 2.

An international organization that has been granted immunity from suit can only have that immunity restricted in two ways: "First, the organization itself may expressly waive its immunity.  Second, the President [of the United States] may specifically limit the organization's immunities when he selects the organization as one entitled to enjoy the Act's privileges and immunities."  Mendaro v. World Bank, 717 F.2d 610, 613 (D.C. Cir. 1983).  The plaintiff does not claim that the IIC's immunity has been specifically restricted by the President.  Therefore, this suit may proceed only if the IIC has expressly waived its immunity.  Id.

Both parties rely on language from Article VII of the IIC charter as support for their respective positions, but disagree on the interpretation of the language.  Article VII of the IIC charter states:

> Actions may be brought against the Corporation only in a court of competent jurisdiction in the territories of a member country in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.

IIC Charter Art. VII, § 3(a).  Courts have interpreted this exact language, which exists in the charters of numerous international organizations, as an express waiver of immunity in certain kinds of cases.  See, e.g., Atkinson v. Inter-Am. Dev. Bank, 156 F.3d 1335, 1337-38 (D.C. Cir.

---

[6](...continued)
12567 (Oct. 2, 1986)

1998) (analyzing identical language in the Inter-American Development Bank's Articles of Agreement); Mendaro, 717 F.2d at 617 (addressing the same language in the World Bank's charter). According to the Court in Mendaro, "since the purpose of the immunities accorded international organizations is to enable the organizations to fulfill their functions, . . . it is likely that most organizations would be unwilling to relinquish their immunity without receiving a corresponding benefit which would further the organization's goals." Mendaro, 717 F.2d at 617. Thus, Article VII of the ICC charter may only be viewed as a waiver if permitting suit "would arguably enable the organization to pursue more effectively its institutional goals." Id. In other words, "immunity should be construed as not waived unless the particular type of suit would further the [organization]'s objectives." Atkinson, 156 F.3d at 1338.

The defendant cites numerous cases where courts have found that immunity had not been waived because the specific causes of action did not meet this standard. Def.'s Mem. at 10-11. For example, in Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank, 251 F. Supp. 2d 126, 132 (D.D.C. 2003), the plaintiff, an American corporation, contracted to construct a telecommunications system for the government of Guyana in which the plaintiff would have an ownership interest when the project was completed. Thereafter, the plaintiff filed suit to challenge the validity of an Inter-American Development Bank ("IDB") loan designated to finance a competing system whose operations would violate the plaintiff's exclusive licensing rights awarded by the Guyanese government. Id. at 128. Finding that the IDB's immunity was not waived, the Court stated that "were [the] suit to be allowed, virtually any U.S. citizen with a commercial grievance against a debtor nation could challenge an IDB loan to that nation without any 'corresponding benefit' accruing thereby to the IDB whatsoever." Id. at 132 (quoting

8

Atkinson, 156 F.3d at 1338); see also Atkinson, 156 F.3d at 1338-39 (finding that the IDB was

immune from a suit to compel it to garnish the wages of one of its employees); Mendaro, 717

F.2d at 610; Aguado v. Inter-Am. Dev. Bank, 85 F. App'x 776, 777 (D.C. Cir. 2004) (affirming

district court ruling that the IDB was immune from a wrongful termination suit by a former

employee).

The plaintiff argues that the cases referenced in the preceding paragraph and cited by the

defendant are distinguishable from this case, pointing out that the cases cited by the defendant

arose in the employer/employee relations or grievance contexts.  Pl.'s Opp'n at 4.  Particularly, as

the plaintiff notes, Atkinson, 156 F.3d at 1338-39, and a number of other cases cited by the

defendant stem from facts based on the internal operations of the organizations in question.  Pl.'s

Opp'n at 4-5.  The rationale for upholding immunity in the employment context, as found by the

court in Mendaro, is that "the purpose of immunity from employee actions is rooted in the need

to protect international organizations from unilateral control by a member nation over the

activities of an international organization within its territory."  Mendaro, 717 F.2d at 615.

Mendaro concerned a World Bank employee who filed claims of sexual discrimination and

retaliation against the Bank under Title VII of the Civil Rights Act of 1964.  Id. at 612.  The

Court upheld the Bank's immunity from these claims, stating that "activities of international

organizations are designed to resolve problems spanning national boundaries, . . . . [and] thus

owe their primary allegiance to the principles and policies established by their organic

documents, and not to the evolving legislation of any one member."  Id. at 619.  Based on this

reasoning, the court found "no evidence that the members of the [World] Bank intended to waive

the Bank's immunity to employee suits."  Id. at 617.  The Mendaro Court went on to distinguish

internal, employment-based suits from what it referred to as "commercial transactions with the outside world." Id. at 618. The Court found that "[a] waiver of immunity with respect to [the organization's] commercial transactions with the outside world is . . . evident under Article VII." Id. Organizations waive immunity with respect to these types of transactions, the court reasoned, since if "immunity were not waived the Bank would be unable to purchase office equipment or supplies on anything other than a cash basis. . . . Such a restriction would unreasonably hobble its ability to perform the ordinary activities of a financial institution operating in the commercial marketplace." Id. Thus, for immunity to be waived in this case, the defendant's contact with the plaintiff must involve interaction with an outside entity, as opposed to the internal dealings of the organization with its own employees. Id.

The plaintiff's first two claims for breach of implied contract and unjust enrichment fall into the category of claims for which the court in Mendaro found that an international organization like the defendant could waive its immunity from suit. Id. at 618-619. These claims are based on commercial transactions between the IIC and an outside, independent vendor, Compl. ¶¶ 27, 29, rather than claims dealing solely with the internal operations of the organization. See Mendaro, 717 F.2d at 618. In other words, the plaintiff's status as an independent contractor is distinguishable from an internal employer/employee conflict. If none of the IIC's independent contractors were able to resort to the judicial process, they would have no other recourse and may grow wary of doing business with the IIC "on anything other than a cash basis." Mendaro, 717 F.2d 618. The IIC, then, would have difficulty establishing and maintaining relationships with such contractors, resulting in circumstances which create that "particular type of suit [which] would further the [organization]'s objectives." Atkinson, 156 F.3d at 1338. Accordingly, the

defendant is not immune from the plaintiff's claims for breach of implied contract and unjust enrichment.

On the other hand, the plaintiff's remaining claims for defamation and tortious interference with his prospective business advantage do not fit into the classification of "commercial transactions with the outside world." Mendaro, 717 F.2d at 618. There is no foreseeable way that allowing a suit asserting these causes of action would further the IIC's objectives. As the District of Columbia Circuit stated in upholding another international organization's immunity against a defamation claim, a "defamation claim neither furthers the World Bank's objectives or enhances the Bank's ability to participate in commercial transactions." Dujardin v. Int'l Bank for Reconst. & Dev., 9 F. App'x 19, 20 (D.C. Cir. 2001).[7] The same can be said of a tortious interference claim. While this Court's independent research failed to unearth direct authority for this proposition, a tortious interference claim is analogous to the defamation claim in Dujardin, when both the defamation and tortious interference claims arise from the same alleged statements made by employees of the defendant. Compl. ¶¶ 32, 36. Unlike the plaintiff's breach of implied contract and unjust enrichment claims, which arose from the type of transaction contemplated in Mendaro, 717 F.2d at 618, the plaintiff's defamation and tortious interference claims will not necessarily provide the IIC with any current or future benefit. For these reasons, the Court finds that it does not have subject matter jurisdiction to entertain Counts III (defamation) and IV (tortuius interference) of the complaint, and those claims must be dismissed. The plaintiff has established, however, that Counts I (breach of contract) and II (unjust enrichment) fall within the

---

[7]The plaintiff in Dujardin was a former employee of a borrower of the organization, and the court's ruling that the organization was immune from a defamation suit was grounded in the fact that defamation claims do not further the organization's objectives. Id.

subject matter jurisdiction of this Court.

B.  The Plaintiff's Breach of Implied Contract Claim

The plaintiff argues that an implied contract existed between himself and the IIC for the work he performed in 2003.  Compl. ¶ 27.  He bases this argument on his prior relationship with the IIC, wherein he performed valuable services at the direction of IIC officials, who "were fully aware of the compensation history and nature of [his] consulting activities and of his expectation of compensation for the [s]ervices."  Id.  The plaintiff presents two arguments in support of his contention that his expected level of compensation was known to both parties.  Pl.'s Mem. at 12.  First, he claims that he orally discussed his expectation of compensation with an IIC official early in 2003, and agreed to formalize those terms in a writing at a later point.  Id.  Second, the plaintiff claims that by operating without a formal contract in place, the parties had impliedly agreed to "the same terms of compensation the parties had previously used."  Id.  The IIC, in its motion to dismiss, argues that no such implied contract ever existed.  Def.'s Mem. at 15.  The IIC specifically states that there cannot possibly have been an implied agreement as to compensation, because under the plaintiff's four prior contracts with the IIC, he was compensated in different ways and he therefore cannot rely on any of the terms of those contracts as a basis for an implied contract.  Def.'s Mem. at 13-14.

An implied contract "is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt."  Bloomgarden v. Coyer, 479 F.2d 201, 208 (D.C. Cir. 1973).  The plaintiff

claims that both parties understood that all the terms from his prior contracts with the IIC would be applied to his 2003 services.  Compl. ¶ 27; Pl.'s Opp'n at 12.  The IIC's argument that no such contract existed here is grounded in the fact that all the necessary elements of a binding agreement were not present.  Def.'s Mem. at 12.  Specifically, the IIC argues that an absence of any agreement concerning compensation is fatal to the implied contract claim.  Id.

The District of Columbia Court of Appeals has held that to establish the existence of an implied contract, a plaintiff must show four elements: "(1) valuable services being rendered; (2) for the person sought to be charged; (3) which services were accepted by the person sought to be charged . . . ; (4) under such circumstances as reasonably notified the person sought to be charged that [the person rendering the services] expected to be paid by him or her."  Vereen v. Clayborne, 623 A.2d 1190, 1193 (D.C. 1993).  The IIC does not specifically dispute that these elements have been satisfied, see Def.'s Mem. at 13, but argues that satisfaction of these elements is merely a threshold determination.  Id.  The plaintiff, according to the IIC, having crossed that threshold, must then show, as in any other contract, the existence of an agreement on all material terms – including compensation.  Id.  The Court agrees that the existence of a contract hinges on an agreement on all material terms, even if the agreement is implied.  Perles v. Kagy, 362 F. Supp. 2d 195, 199 (D.D.C. 2005), rev'd on other grounds, 473 F.3d 1244 (D.C. Cir. 2007) ("[A]lthough finding the existence of four of the elements of an implied-in-fact contract, the Court must also consider whether traditional fundamental contract elements exist.  One such element . . . is that all contracts contain an agreement as to all material terms including an agreement on consideration.").

The plaintiff himself outlined the terms of his compensation under his prior contracts, and all

13

four contracts provided for different criteria in determining his compensation. Pl.'s Mem. at 13-

14. Although all of his previous agreements with the IIC provided for success fees based on loan

"participations identified and implemented" by the plaintiff, all four specified fees calculated

from different percentages of successfully implemented loans. Id. Additionally, two of the

contracts provided the plaintiff with monthly retainers in the amount of $4,000 per month and

two did not. Id.[8] Therefore, it is difficult to assign specific contract terms when there have been

varying compensation terms with respect to earlier contracts. This is especially true because as

the defendant notes, the plaintiff's current claim for damages is based on calculations using a

daily consulting fee, which had never been the basis for compensation under any of his prior

contracts. See Pl.'s Mem., Ex. 7 (Email # 266, Oct. 7, 2003 email from Jorge Vila to Jacques

Rogozinski) (documenting the plaintiff's request for a consulting fee of $847 per day as

compensation for work performed during 2003). Finally, with respect to the plaintiff's

contention that the parties intended to document their agreement for compensation "later," this

statement adversely impacts the plaintiff's position more than it helps. The fact that the parties

contemplated formalizing their discussions in a later writing is evidence against the formation of

an enforceable oral agreement, not in favor of it. Perles v. Kagy, 473 F.3d 1244, 1249 (D.C. Cir.

2007).

Taking all the facts in the plaintiff's complaint as true, those facts do not amount to a breach

of contract. There is simply no indication that the parties agreed, impliedly or otherwise, on a

compensation scheme for the plaintiff's services. It is this Court's determination, therefore, that

---

[8]One contract paid the plaintiff $28,000 in monthly retainer fees for seven months of work, and the other
$12,000 for three months. Pl.'s Mem. at 13.

the plaintiff is unable to state a claim for breach of an implied contract, and Count I of the

complaint must be dismissed pursuant to Rule 12(b)(6).[9]

C.  The Timeliness of the Plaintiff's Unjust Enrichment Claim

     The IIC argues that the plaintiff's unjust enrichment claim is barred by the applicable statute

of limitations.  Def.'s Mem. at 16, 19.  The defendant states, and the plaintiff does not dispute,

that this claim is subject to a three-year statute of limitations.  Def.'s Mem. at 19 (citing

Construction Interior Sys., Inc. v. Donohoe Cos., Inc., 813 F. Supp. 29, 33 n.4 (D.D.C. 1992)

(stating that the three-year statute of limitations for breach of contract under District of Columbia

law "also appl[ies] to any equitable claims, such as unjust enrichment").  The IIC argues that the

claim accrued, if at all, more than three years prior to October 26, 2006, the date when the

plaintiff filed his complaint.  The plaintiff, on the other hand, claims that the cause of action

accrued and the claim was filed within the three-year window and should be allowed to proceed.

Pl.'s Mem. at 16.

     As stated by the District of Columbia Court of Appeals,

> it is undisputed that the statute of limitations begins to run when a claim
> accrues, and that a cause of action accrues when its elements are present,
> so that the plaintiff could maintain a successful suit.  Unjust enrichment
> occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the
> defendant retains the benefit; and (3) under the circumstances, the
> defendant's retention of the benefit is unjust.

New World Comm'ns, Inc. v. Thompsen, 878 A.2d 1218, 1223 (D.C. 2005).  A cause of action

for unjust enrichment accrues, then, when all three of those elements are present.  In other words,

the claim accrues when "the enrichment becomes unjust," which is the point at which services

---

[9]Having concluded that there was no implied contract between the parties, there is no need to address or analyze the defendant's argument that this claim is time-barred.

have been rendered and payment is refused.  Id.

Here, the plaintiff alleges that he performed services for the IIC for which payment was refused, thereby unjustly enriching the defendant.  Compl. ¶¶ 8-9, 18-19.  For purposes of determining when his cause of action accrued, this Court must determine when that enrichment became unjust; that is, when the defendant allegedly committed the wrongful act of refusing payment.  Thompsen, 878 A.2d at 1223.  Both parties refer to numerous emails between the plaintiff and IIC officials, beginning in August 2003, and running through at least November of that year.  In the Court's view, none of the emails that predate the November 4, 2003 email from Alejandra Vallejo to the plaintiff were sufficiently unequivocal to cause the unjust enrichment claim to accrue.  See Pl.'s Mem., Ex. 2 (Translated Nov. 4, 2003 email from Alejandra Vallejo to Jorge Vila).  However, in the November 4 email, Ms. Vallejo made it clear that "[t]he IIC cannot process any payment for consulting services that is not supported by a formal agreement."  Id. Ms. Vallejo then stated that the plaintiff's "last contractual term ended on 31 December 2002." Id.  On the other hand, in the plaintiff's prior communications with IIC officials, he was given numerous indications that he would receive at least some compensation.  Specifically, on August 28, 2003, Steven Reed, an IIC official, informed the plaintiff that while he would not be compensated for some work, he would be compensated for other work performed.  Pl.'s Mem., Ex. 7 (Email # 262, Aug. 28, 2003 email from Steven Reed to Jorge Vila).  Later, on September 12, 2003, Mr. Reed again made reference to the possibility of Vila receiving a success fee for some of his work.  Id. (Email # 264, Sept. 12, 2003 email from Steven Reed to Jorge Vila).  In response to the plaintiff's second submission of a request for payment on October 22, 2003, Ms. Vallejo responded with a request for a contract or other documentation of the plaintiff's

16

relationship with the IIC.  Id. (Email # 268, Oct. 22, 2003 email from Alejandra Vallejo to Jorge

Vila).  It was not until Ms. Vallejo's November 4 email that the plaintiff was told, without

qualification, that absent a written contract, he would not be compensated at all.  As this was the

IIC's first outright refusal of any payment for the services allegedly provided by the plaintiff, this

was the point at which the IIC's purported enrichment became unjust, and thus the point at which

the plaintiff's unjust enrichment cause of action accrued.  Thompsen, 878 A.2d at 1223.  The

defendant's arguments that the plaintiff was refused payment in August 2003, see Def.'s Mem. at

21-22, are unpersuasive.  As described above, each communication from the IIC to the plaintiff

prior to November 4, 2003, indicated in some way the possibility of the plaintiff receiving some

compensation for his services.  Thus, when the plaintiff filed his claim on October 26, 2006, it

was filed within three years of the November 4, 2003, refusal of his requests for any payment for

his services.  Accordingly, the unjust enrichment claim is timely.  See Thompsen, 878 A.2d at

1223.

D.  The Sufficiency of the Plaintiff's Unjust Enrichment Claim

     Vila has alleged facts that, if true, amount to a valid claim for unjust enrichment.

A "cause of action [for unjust enrichment] accrues upon presentment and subsequent rejection of

a bill for services, or as soon as the services were rendered."  Thompsen, 878 A.2d at 1223

(citations omitted).  The plaintiff contends that he conferred a benefit to the IIC by performing

valuable consulting services.  Compl. ¶¶ 8-9.  The IIC, by allegedly accepting Vila's services, id.

¶ 10, has retained that benefit.  Finally, by refusing payment to the plaintiff, id. ¶ 19, the IIC's

acceptance of those services was unjust.  The IIC has not specifically argued that the plaintiff's

unjust enrichment claim must be dismissed as invalid; it merely states that it is immune from the

17

claim or, alternatively, that the claim is time-barred.  Def.'s Mem. at 2-3.  This court has already determined, <u>supra</u>, that the IIC is not immune from the unjust enrichment claim, and that the claim is timely.  Accordingly, the plaintiff's unjust enrichment claim cannot be dismissed.

## IV. Conclusion

The plaintiff has not established by a preponderance of the evidence that the IIC has waived its immunity from suit with respect to Counts III and IV of the complaint, and therefore has not established that this Court has subject matter jurisdiction to entertain those counts under Rule 12(b)(1).  Additionally, the plaintiff has failed to establish the existence of an implied contract between himself and the IIC, and therefore, he has failed to state a claim upon which relief may be granted with respect to Count I of the complaint.  Therefore, the defendant's motion to dismiss the complaint is granted with respect to Counts I, III, and IV of the complaint, and denied with respect to Count II of the complaint.

**SO ORDERED** this ___ day of February, 2008.


_____
REGGIE B. WALTON
United States District Judge