UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JORGE VILA,                         )
                                    )
          Plaintiff,                )
                                    )
     v.                             )   Civil Action No. 06-2143 (RBW)
                                    )
INTER-AMERICAN INVESTMENT           )
CORPORATION,                        )
                                    )
          Defendant.                )
_____ )

**MEMORANDUM OPINION**

The plaintiff in this civil matter asserts a claim of unjust enrichment against the defendant because the defendant allegedly "failed to compensate him for consulting services delivered to [the] [d]efendant."[1] Amended Complaint for Damages ("Am. Compl.") ¶ 5. Currently before the Court is the Defendant's Motion for Summary Judgment ("Def.'s Mot.") on this claim. After careful consideration of the parties' submissions, the Court concludes for the following reasons that it must deny the defendant's motion.[2]

**I.   BACKGROUND**

The defendant is an "international organization whose mission is to promote economic

---

[1] The plaintiff's original Complaint also asserted claims of Defamation and Tortious Interference with Prospective Advantage. Amended Complaint for Damages at 1. On February 22, 2008, the Court issued a Memorandum Opinion and Order dismissing all of the plaintiff's claims except for his claim of unjust enrichment. See Vila v. Inter-Am. Inv. Corp., 536 F. Supp. 2d. 41 (D.D.C. 2008).

[2] In addition to the documents previously referenced, the Court considered the following submissions in reaching its decision: (1) the defendant's Statement of Material Facts as to Which There is No Genuine Issue in Support of the Motion for Summary Judgment by Defendant Inter-American Investment Corporation ("Def.'s Facts"); (2) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (3) the Plaintiff's Response/Rebuttal to Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Pl.'s Facts"); (4) the Plaintiff's Memorandum of Points and Authorities in Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); and (5) the Defendant's Reply in Support of its Motion for Summary Judgment ("Def.'s Reply").

1

development in Latin America and the Caribbean with a focus on small and medium-sized businesses in those regions." Def.'s Facts ¶ 1; see also Pl.'s Facts ¶ 1. One method by which the defendant "achieves this mission" is by coordinating business loans through the use of third-party co-financing, commonly referred to as "A-B loans." Def.'s Facts ¶ 2; see also Pl.'s Facts ¶ 2. "An A-B loan has two components: the A-loan is a direct loan from the [defendant] to the borrower, and the B-loan is an individual or syndicated loan funded by financial institutions." Def.'s Facts ¶ 3; see also Pl.'s Facts ¶ 3.

In 2001 and 2002, the defendant retained the plaintiff as an independent consultant. Def.'s Facts ¶ 5; see also Pl.'s Facts ¶ 5. In this capacity, the plaintiff "assisted the [defendant] in arranging A-B loans, including by identifying potential B-loan lenders and encouraging them to participate in A-B loans with the [defendant]." Def.'s Facts ¶ 6; see also Pl.'s Facts ¶ 6. According to the plaintiff, he was also responsible for "reporting on market conditions in co-financing activities, evaluating the structure of new [defendant] co-financing transactions, present[ing] to the [defendant] possible co-financing transactions, and assist[ing] in obtaining regulatory approvals for [the defendant's] activities in non-borrowing member countries." Pl.'s Facts ¶ 6.

According to the defendant, the plaintiff conducted these services pursuant to three written agreements, all of which "provided for compensation based on a 'success fee'— a contingency fee awarded to [the plaintiff] if the A-B loan he was working towards was successful." Def.'s Facts ¶ 7. The second of the three contracts also "provided for . . . a monthly retainer in the amount of $4,000 per month . . . , in addition to the possibility of a success fee." Id. ¶ 8. The plaintiff earned this monthly retainer for ten of the nineteen months of his tenure with the defendant, "representing 53% of the total time." Pl.'s Facts ¶ 7.

According to the plaintiff, "[i]n 2003, [the] [d]efendant again requested [the] [p]laintiff to provide his services." Pl.'s Opp'n at 9; see also Def.'s Mem. at 4. The defendant contends that the scope of this new request was for the plaintiff's "assistance in connection with two potential . . . co-financing projects: one for Banco Safra (a Brazilian bank) and one for Sunset Beach Resorts (a Jamaican resort)." Def.'s Mem. at 4-5 (citation omitted). With respect to the proposed A-B loan for Banco Safra, the plaintiff asserts that he worked to "obtain[] a mandate from Banco Safra . . . , arrange[d] a syndicated credit facility for Banco Safra, identif[ied] potential participants, negotiate[ed] terms and conditions with Banco Safra and potential participants, and . . . draft[ed], review[ed,] and distribute[d] relevant confidential documentation." Pl.'s Opp'n at 12-13. While the defendant "signed an A-B Loan agreement" with Banco Safra, "no B-loan participation agreements were signed by any B-loan lenders" and thus, the defendant asserts that this project was not successful. Def.'s Mem. at 6.

With respect to the loan for Sunset Beach, the plaintiff claims that he "identified a co-financier for a . . . loan . . . , negotiate[ed] terms and conditions with the co-financier and [a] Sunset Beach sponsor[,] and . . . draft[ed], review[ed,] and distribute[d] relevant confidential documentation." Pl.'s Opp'n at 13. According to the defendant, these efforts were also unsuccessful because the plaintiff "identified only one potential lender (Scotiabank Toronto)[,] which indicated it would be willing to provide only 'parallel financing,' 'NOT . . . a B Loan.'" Def.'s Mem. at 6 (citation omitted). "In other words, the potential lender considered providing direct financing to Sunset Beach alongside a direct loan from the [defendant], not as part of an A-B loan." Id. The plaintiff notes, however, that he informed the defendant of the lender's intentions to provide direct financing in April 2003, and the defendant's "officers did not raise any objections." Pl.'s Facts ¶ 16. The plaintiff "continued to work actively with [the

3

defendant's] officers on Sunset Beach until" the defendant approved parallel financing in July 2003.  Id.[3]

In addition to these efforts, the defendant requested the plaintiff's services beyond the identification of potential B-Lenders during the period of time under which the parties operated without a formal written agreement.  See Pl.'s Opp'n at 9.  First, the plaintiff assisted in the administration of a ratified A-B Loan for Invertec Pesquera Mar de Chiloe, S.A. ("Invertec").  Def.'s Mem. at 7.  Following the defendant's disbursement of the A-loan to Invertec, but prior to the third-party financier's disbursement of the B-loans, Invertec fell out of "compliance with certain financial ratios it was required to maintain under the A-B Loan."  Id.  In an attempt to preserve the B-loan financing, the defendant asked the plaintiff to seek waivers from the third-party financiers.  Id.  The defendant characterizes these efforts as unsuccessful because "both of the B loan lenders rejected the waiver request."  Id.  The defendant also asked the plaintiff to prepare a "basic description of the [A-B Loan] program" that it could provide to potential A-B Loan customers.  See id. at 7-8.  The defendant contends that this summary "played no role whatsoever in any A-B loans approved by the [defendant]," id. at 8, but the plaintiff argues that the summary was used for "marketing [the] [d]efendant's A-B Loan program in Brazil," Pl.'s Opp'n at 9.

For the purposes of its motion, the defendant acknowledges the plaintiff's allegations that "no specific compensation structure was discussed" between the parties, but that the defendant informed the plaintiff that he would be "compensated on the same basis as [his] prior contractual

---

[3] Ultimately, Sunset Beach, as the borrower in the arrangement, "abandoned the entire proposed loan" and "neither a direct loan nor an A-B loan" was issued.  Def.'s Mem. at 7.

arrangements." Def.'s Mem. at 5 (citation and internal quotation marks omitted).[4] According to the plaintiff, Victor Moscoso, an employee of the defendant, "described the 'same basis' of compensation as 'a combination of a success fee and a monthly retainer, calculated according to the type of services required and the success achieved.'" Id. at 4-5 (citations omitted); see also Pl.'s Opp'n at 12. The plaintiff further contends that these verbal conversations "did not define 'success,' nor did they specify that [the] [p]laintiff would be compensated only if [the] [p]laintiff identified B-loan lenders and B[-]loans were disbursed." Pl.'s Opp'n at 12.

The defendant declined to compensate the plaintiff for his services, see Def.'s Mem. at 2 ("[the plaintiff] allegedly performed services related to the [defendant's] projects and was not paid to do so"), and the plaintiff brought this action asserting a common law claim of unjust enrichment against the defendant. Am. Compl. ¶ 5. The defendant now moves for summary judgment on this claim. Def.'s Mot. at 1.

## II.     STANDARD OF REVIEW

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," based upon the depositions, affidavits, and other factual materials in the record. Fed. R. Civ. P. 56(a), (c). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And "a dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting Anderson, 477 U.S. at 247). The moving party bears the initial burden of

---

[4] As noted by the defendant, it "disputes [the plaintiff]'s account of the alleged conversations between [the parties] concerning compensation. However, the [defendant] recognizes that, in resolving [its] motion for summary judgment, the Court must construe all disputed facts in favor of the non-moving party." Def.'s Mem. at 5 n.3.

showing the absence of a disputed material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If this burden is satisfied by the moving party, the burden then shifts to the opposing party to "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248.  "Although summary judgment is not the occasion for the court to weigh credibility or evidence, summary judgment is appropriate 'if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011) (citations omitted) (quoting Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party."  Anderson, 477 U.S. at 249.  In making this assessment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party."  Talavera, 638 F.3d at 308 (citing Anderson, 477 U.S. at 255).  These inferences, however, must be "justifiable."  Anderson, 477 U.S. at 255.

### III.   ANALYSIS

"The District of Columbia recognizes unjust enrichment as a species of quasi contract that imposes, 'in the absence of an actual contract, . . . a duty . . . upon one party to requite another in order to avoid the former's unjust enrichment[,] . . . [and therefore] to permit recovery by contractual remedy in cases where, in fact, there is no contract.'"  Vila v. Inter-Am. Inv., Corp., 570 F.3d 274, 279-80 (D.C. Cir. 2009) (quoting 4934, Inc. v. D.C. Dep't of Emp't Servs., 605 A.2d 50, 55 (D.C. 1992)).  A party "states a legally cognizable unjust enrichment claim when[:] (1) the plaintiff confers a benefit on the defendant; (2) the defendant retains the benefit[;] and (3) under the circumstances, the defendant's retention of the benefit is unjust."

Armenian Assembly of Am., Inc. v. Cafesjian, 597 F. Supp. 2d 128, 134 (D.D.C. 2009) (citing News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005)).  Where these elements are satisfied, "the recipient of the benefit has a duty to make restitution to the other person 'if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it.'"  4934, Inc., 605 A.2d at 55-56 (citation omitted).  "[E]very unjust enrichment case is factually unique, for whether there has been unjust enrichment must be determined by the nature of the dealings between the recipient of the benefit and the party seeking restitution, and those dealings will necessarily vary from one case to the next."  Id. at 56.

      The defendant concedes that "there is a factual dispute—a substantial one—concerning whether [the plaintiff] actually conferred a benefit on the [defendant] and the value of any such benefit."  Def.'s Reply at 2-3.  However, the defendant argues that it "is entitled to summary judgment because [the plaintiff] cannot establish that any alleged enrichment to the [defendant] would be unjust—the third element of an unjust enrichment claim—because the facts indisputably show that none of the projects [the plaintiff] claims he worked on were successful."  Id. at 3.  "[W]hether there has been unjust enrichment must be determined by the nature of the dealings between" the parties, 4934, Inc., 605 A.2d at 56, and the defendant asserts that "[t]he parties' prior course of dealing provides objective, indisputable evidence of what the parties considered to be just and fair for the types of services [the plaintiff] allegedly provided to the [defendant]," Def.'s Mem. at 11.  This is because "[f]or years, [the plaintiff] provided consulting

services to the [defendant] on the express understanding that he would be compensated <u>only</u> if his efforts resulted in demonstrable success for the [defendant]." <u>Id.</u>

The Court is unpersuaded for two reasons.  First, there is a genuine dispute of material fact with respect to the expectations of the parties as to the plaintiff's compensation.  While it is true that an unjust enrichment claim fails "where the 'plaintiff did not contemplate a personal fee, or the defendant could not reasonably have supposed that he did,'" <u>Berry Law PLLC v. Kraft Foods Grp., Inc.</u>, __ F.3d __, __, 2015 WL 394094, at *2 (D.C. Cir. Jan. 30, 2015) (quoting <u>Bloomgarden v. Coyer</u>, 479 F.2d 201, 212 (D.C. Cir. 1973)), it cannot be said that the parties did not reasonably expect that there would be at least some form of payment.  Assuming the veracity of the plaintiff's allegations, as the Court must do in resolving this motion, the defendant verbally told to the plaintiff that, in addition to any contingency payments for successful A-B Loan projects, he would be entitled to a monthly retainer.  <u>See</u> Def.'s Mem. at 4-5 (citations omitted); <u>see also</u> Pl.'s Opp'n at 12.  As "there is a dispute of material fact as to the value of [the plaintiff]'s services," the Court must deny the defendant's motion for summary judgment for this reason alone.  <u>See</u> <u>Brannock Assocs., Inc. v. Capitol 801 Corp.</u>, 807 F. Supp. 127, 132 (D.D.C. 1992).

Second, there exists a genuine dispute of material fact as to the parties' definition of the meaning of "success" related to the payment of a contingency fee.  <u>See</u> Pl.'s Mem. at 12 ("Their agreement did not define 'success,' nor did they specify that [the] [p]laintiff would be compensated only if [the] [p]laintiff identified B-loan lenders and B loans were disbursed.").  Due to this dispute, the parties are in conflict as to whether the plaintiff achieved "success" on any project that would warrant a contingency payment—specifically, whether securing third-party parallel co-financing for Sunset Beach warrants the payment of a contingency fee.

Compare Def.'s Reply at 1 ("those projects indisputably were not successful"), with Pl.'s Opp'n at 17 ("the Sunset beach project was completed"). This too raises a genuine dispute of material fact as to the value of the plaintiff's services that precludes summary judgment. See Brannock, 807 F. Supp. at 132.

      While prior agreements between the parties contemplated the payment of a contingency fee only in circumstances where the plaintiff secured "executed and enforceable loan participation agreement(s)" from "commercial bank participant(s) in the total principal amount of the B loan participation" that are "interested in participating as a B loan participant in the Corporation's financing," Pl.'s Mot. Exhibit 3, Agreement for Consulting Services between Inter-American Investment Corporation and Jorge Vila, at 1-2, the Court must also consider the entire "nature of the dealings between" the parties, 4934, Inc., 605 A.2d at 56. Thus, for example, according to the plaintiff, the defendant continued to employ the plaintiff's services to secure and finalize financing for Sunset Beach, even after the plaintiff informed the defendant that the third-party financiers did not intend to provide the money pursuant to a B-Loan. Pl.'s Facts ¶ 16. This suggests that the parties may have expected compensation to be paid in circumstances other than as provided in prior agreements. Similarly, it appears that the defendant appreciably expanded the scope of the plaintiff's consulting role during the period that the parties operated without a contract. Specifically, the plaintiff assisted in the administration of Invertec's A-B loan after B-loan lenders had been identified, and prepared general marketing

material for the defendant's A-B loan program.[5]  Def.'s Mem. at 7-8.  As the completion of these requested services would not result in "success" as defined under the parties' prior agreements, the Court finds unreasonable the defendant's notion that the agreements "provide objective evidence of what the parties considered to be fair and just compensation for the work [the plaintiff] allegedly performed and now claims unjustly enriched the [defendant]." Id. at 1.  For these reasons, the Court cannot conclude as a matter of law that the terms from the prior agreements are controlling with respect to the conditions for which a contingent payment would be made.  Instead, "it remains for the trier-of-fact to determine whether it was unjust for plaintiffs to retain these benefits" where "[s]uch a determination will ultimately depend on disputed material facts." Chen v. Bell-Smith, 768 F. Supp. 2d 121, 152 (D.D.C. 2011).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that genuine disputes of material fact in this case preclude summary judgment for the defendant.  Accordingly, the Court must deny the defendant's motion.

**SO ORDERED** this 16th day of March, 2015.[6]

REGGIE B. WALTON<br>United States District Judge

---

[5] The defendant goes to great lengths to argue that the A-B loan summary "was not used in any way in connection with any A-B loans to any banks," and therefore, "an additional basis exists to grant summary judgment for the [defendant] with respect to [the plaintiff]'s" claims of unjust enrichment derived from the loan summary. See Def.'s Mem. at 16.  But such a conclusion would require the Court to find that the parties expected compensation payments only where the plaintiff achieved "success" in securing an A-B loan, which it has already declined to do.  At best, there exists a genuine dispute of material fact as to the value of the compensation that is appropriate for the plaintiff's preparation of the loan summary, which precludes summary judgment. See Brannock, 807 F. Supp. at 132.

[6] An Order consistent with this Memorandum Opinion will be issued contemporaneously.